1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JERRY WAYNE JOHNSON,

11             Petitioner,              No. CIV S-05-1002 GEB GGH P

12        vs.

13   DAVID L. RUNNELS, Warden,

14             Respondent.          FINDINGS AND RECOMMENDATIONS

15   _____/

16   *Introduction and Summary*

17             Petitioner, a three striker sentenced to 35 years to life for residential burglary and

18   being a felon/addict in possession of a firearm, believes that he was denied his right to represent

19   himself when the trial judge denied his request as a "delaying tactic" one court day before the

20   then scheduled date of his trial.  For the reasons expressed herein, the state courts did not

21   unreasonably apply established Supreme Court law in determining this matter adverse to

22   petitioner.

23   *Facts*

24             Only the basic chronological facts will be given here, as a full factual discussion

25   pertinent to the one issue in this petition will be given in the *Discussion*.  The basic facts are

26   taken from the decision of the California Court of Appeal in this case:

A jury convicted defendant Jerry Wayne Johnson of first degree burglary (Pen.Code, §§ 459, 460) FN1 and felon in possession of a firearm (§ 12021, subd. (a)). The trial court found that he had two prior serious felony convictions (§ 667, subd. (a)) and four strikes under the three strikes law (§§ 667, subds.(b)-(i), 1170.12). The court imposed an aggregate prison sentence of 35 years to life.

FN1. Further undesignated section references are to the Penal Code.

****

In January 2002, defendant was initially charged in this case and arraigned. Following a preliminary hearing in February, he was bound over for trial. The case was continued several times and ultimately set for trial in September. On September 16, defendant's motion for a further continuance was denied and the matter remained set for trial on the following day. But on September 17, defense counsel questioned defendant's mental competence and the trial court suspended proceedings for a competency evaluation. (§ 1368.)

On January 23, 2003, the trial court found defendant to be competent to stand trial and reinstated the proceedings. Defendant's appointed counsel (the public defender's office) subsequently declared a conflict, and the court appointed a new attorney on February 5. Defendant was present in court at subsequent hearings on February 10, February 24, and February 25, and the case was set for a jury trial on March 10.

At a hearing on March 3, 2003, defendant indicated he wanted to file a motion to represent himself. The court noted that the trial remained set for March 10, but set a March 7, Faretta FN2 hearing concerning defendant's motion. At that hearing, the court discussed defendant's request for self-representation and asked him several questions.

FN2. Faretta v. California (1975) 422 U.S. 806 [45 L.Ed.2d 562](Faretta ).

People v. Johnson, 2004 WL 2802497 (2004).

The undersigned understands from the briefs that petitioner's trial was later continued one week, and commenced on March 17, 2003.

*Discussion*

    A. The Established Supreme Court Authority to Be Applied

The undersigned will dispense with repeating here the general, well known AEDPA standards, see Clark v. Murphy, 331 F.3d 1062, 1067-1069 (9th Cir. 2003), and will focus on the issue important here. That is, has the Supreme Court established a timeliness deadline for Faretta motions?

2

1   It is clear that only established Supreme Court authority sets the rules in an

2   AEDPA case:

3   In attempting to answer that question, the only definitive source of clearly
    established federal law under AEDPA is the holdings (as opposed to the dicta) of
4   the Supreme Court as of the time of the state court decision. Williams, 529 U.S.
    at 412, 120 S.Ct. 1495. While circuit law may be "persuasive authority" for
5   purposes of determining whether a state court decision is an unreasonable
    application of Supreme Court law, Duhaime v. Ducharme, 200 F.3d 597, 600-01
6   (9th Cir.1999), only the Supreme Court's holdings are binding on the state courts
    and only those holdings need be reasonably applied. See Williams, 529 U.S. at
7   412, 120 S.Ct. 1495 ("The ... statutory language makes clear ... that § 2254(d)(1)
    restricts the source of clearly established law to this Court's jurisprudence.").

8

9   Clark, 331 F.3d at 1069.

10   Petitioner contends, citing Moore v. Calderon, 108 F.3d 261 (9th Cir. 1997), that a

11   Faretta motion is timely made if it occurs prior to the impanelment of a jury unless a court finds

12   that the request is but a ruse for delay. In Moore v. Calderon, a Faretta timeliness case, the panel

13   was unsure at that time of the retroactivity of AEDPA, but nevertheless adjudicated its case on

14   the basis of "old Ninth Circuit law" and in the alternative on AEDPA grounds. In this case,

15   involving the argued untimely assertion of a request to represent oneself, Moore held under pre-

16   AEDPA law that the Ninth Circuit "gloss" on Faretta in respect to timeliness, i.e., a request is

17   timely if it is made prior to jury empanelment, was not a new rule, but one which the Ninth

18   Circuit had determined long ago.

19   However, under AEDPA, 28 U.S.C. § 2254(d), requiring the application of only

20   clearly established law as determined by the Supreme Court, the Ninth Circuit "gloss" could not

21   apply.[1]  So held Marshall v. Taylor, 395 F.3d 1058 (9th Cir. 2005) which correctly saw the

22

23   [1]Although Moore conducted a Teague retroactivity of a "new rule" analysis in its pre-
    AEDPA discussion, the Teague analysis is not identical to the standard set forth in § 2254(d) in
24   that a new rule can be established by authority other than that enunciated by the Supreme Court.
    Jackson v. Brown, 513 F.3d 1051, 1073 (n.8) (9th Cir. 2008). Perhaps petitioner's incorrect
25   insistence that the pre-AEDPA Moore "gloss" holding applies here, because it had long been the
    holding of the Ninth Circuit, is based on a misconception of the authority to be applied in
26   Teague and § 2254(d).

1   AEDPA holding of <u>Moore</u> as, "[i]n *Moore*, we determined that a timeliness element in a *Faretta*

2   request is 'clearly established Federal law, as determined by the Supreme Court,'" but "[<u>Moore</u>]

3   did not define the timing element...."

> Thus, after Moore, we know that <u>Faretta</u> clearly established some timing element,
> but we still do not know the precise contours of that element. At most, we know
> that <u>Faretta</u> requests made "weeks before trial" are timely.

> Because the Supreme Court has not clearly established when a <u>Faretta</u> request is
> untimely, *other courts are free to do so* as long as their standards comport with
> the Supreme Court's holding that a request "weeks before trial" is timely. In
> <u>Windham</u>, the California Supreme Court held that a <u>Faretta</u> request must be made
> a reasonable amount of time before trial.

9   <u>Marshall v. Taylor</u>, 395 F.3d at 1061 (footnotes omitted and emphasis added)[2]

10          Thus, petitioner is clearly wrong in insisting that <u>Moore's</u> timeliness, pre-AEDPA

11   "empanelment rule" governs this case. <u>See also</u> footnote 1 above. Keeping in mind the

12   importance of permitting a defendant to represent himself, a rule of "reasonableness" governs

13   this case as petitioner's request made one week prior to the then scheduled trial, and heard one

14   business day prior to the scheduled start of trial, was not made "weeks before the trial."[3]

15   \\\\\

16   \\\\\

17

---

18          [2] <u>Marshall</u> was clearly aware that <u>Moore</u> had been decided on both a pre-AEDPA and
     post-AEDPA basis. <u>Marshall's</u> statement that no timeliness standards had been set by the
19   Supreme Court, with the exception of "weeks before trial," was a statement based on Supreme
     Court authority extant at the time and presently as well.

20
           [3] Indeed, a close reading of <u>Faretta</u> indicates that the initial request for self-representation
21   in that case came at least 4-5 weeks prior to trial. <u>See</u> <u>Faretta,</u> 422 U.S. at 808 reflecting that the
     initial request was held in a pre-trial hearing, and that "[s]everal weeks thereafter, but still prior
22   to trial" another hearing was held. Even at that second hearing, one can see from the colloquy
     reproduced in <u>Faretta</u> fn3 that the defendant had just that day filed a "995 motion" which then
23   had to be opposed and ruled upon. In researching the briefs to the Supreme Court in <u>Faretta</u>
     (available on Westlaw), the State represented that the initial "petition to Proceed in Propria"
24   Persona" was filed on June 22, 1972, and the second court hearing referenced above was held on
     July 13, 1972. Unfortunately, the trial date was not given in any of the briefs reviewed by the
25   undersigned, but the record reflects that even after this second hearing, the <u>Faretta</u> defendant
     made two more requests concerning his desire not to be represented by the public defender. The
26   "weeks before trial" in the <u>Faretta</u> case was certainly more than one.

B. <u>The Decision of the Trial Court, a Factual Finding, Is Entitled to a Presumption of Correctness and as Affirmed by the Court of Appeal Was Not AEDPA Unreasonable</u>

Petitioner and his counsel arrived at the point of his requesting to represent himself under what the undersigned would term a suspicion of obstructiveness.  On the day set for trial in September, a day after a request for [another] continuance was denied, petitioner's counsel announced that he had problems with his client's competence.  After competency proceedings determined the opposite of the contention, petitioner's then counsel had a conflict, and new counsel had to be employed.  Trial was then set for March 10, but as noted by the Court of Appeal, petitioner was in court several times during February, and not a hint was made that he desired to represent himself.  It was not until a week before his scheduled trial that petitioner sprung his self-representation request (March 3).  The actual, first <u>Faretta</u> hearing was not held until March 7, 2003, one court day before trial.[4]  The colloquy between petitioner and the trial judge started off with what the undersigned might consider an impertinent response from petitioner to the judge's initial questioning of his last minute desire to represent himself:

THE COURT: Why do you want to do that [represent yourself], Mr. Johnson?

THE DEFENDANT: Because I can, sir.

Augmented RT 6.

When asked if he had a reason why he was submitting a <u>Faretta</u> request so belatedly, petitioner demonstrated by his initial garbled responses that he really had no legitimate reason for being so

---

[4]  Petitioner's repeated *post hoc* calculation that he made his first <u>Faretta</u> motion two weeks before trial contorts the facts of this case.  Although it turned out in hindsight that two weeks actually elapsed, the request was in fact made one week prior to the scheduled trial date, and heard one business *day* before that date.  When making the decision, the trial judge had no way of knowing whether the case would actually commence trial Monday at 9:00 a.m., or that it might trail for a day, two days, etc.  The trial judge's decision must be reviewed both on the basis of the facts known and unknowable to the decision maker at the time the decision was made, else the law would place a duty of clairvoyance on the trial judge.  Anyone who has been a trial lawyer knows that a trailing case can be assigned in a moment's notice due to the events in other cases, e.g., settlements, case terminations, swift cross-examinations,  mistrials, and the like.

5

1   late in his request.

2   THE COURT: Okay. There's some paperwork for you to read over, if you understand and agree with it.

3

4   And the next question, your jury trial is set for this coming Monday, why are you bringing me this up [sic ] at such a late date?

5   THE DEFENDANT: Well, it just came-it just came up some stuff I was looking over and-and-

6

7   THE COURT: Well, what stuff were you looking over? If you were going to make this motion, why wasn't it done long ago?

8   THE DEFENDANT: Uh, uh, do I have to have a reason-

9   THE COURT: Yes.

10  THE DEFENDANT:-for doing it?

11  THE COURT: You got [sic ] to give me a reason. I want to know a reason. I want to know why you're doing it now.

12

13  THE DEFENDANT: I'm ready to do it.

    THE COURT: That's not a reason.

14

15  THE DEFENDANT: I went through several attorneys, several attorneys on my case. And I been [sic ] studying my case for [a while] myself. And I'm getting the same feedback from the same attorneys that I already know. And-and which I

16  have talked to the attorneys.

17  And I talked to Mr. Hudson [defense counsel]-

18  THE COURT: Okay.

19  THE DEFENDANT:-and it's the same thing. It's the same thing that I'm telling him. And I could do my own-I could do the case myself, Your Honor.

20

21  THE COURT: You going to be ready to proceed to trial this coming Monday?

    THE DEFENDANT: I-I got motions on that, Your Honor.

22

23  THE COURT: Tell me what they are.

24  THE DEFENDANT: I got a-a continuance motion and a-a-a motion for a private investigator.

25  THE COURT: Okay. I thought so. This is nothing more or less than a delaying tactic to prevent the trial from proceeding. This case has been set for trial for more

26  than a year.

1    Your motion to represent yourself is denied. I will find that it's-it's an-an attempt
     on your behalf to delay the proceedings.
2

3  Augmented RT 6-9

4          The trial judge might well have asked for how long petitioner was seeking a

5  continuance (22 days as petitioner later stated, see RT 3), but in light of the multiple

6  continuances of the case, and the allied request for "an investigator," which had the potential to

7  take the case back to square one (which the judge obviously saw right away), the lack of a

8  specific question was justifiable.

9          A courtroom was apparently not available on March 10, see RT 2, and a further

10  conference before a different judge was held wherein  petitioner brought up the previous denial

11  of his Faretta request.  After a brief colloquy, the second judge determined not to hear the motion

12  again so close to its denial before.  RT 6-7.  More is said about this below.

13          The Court of Appeal reviewed the matter and found "ample evidence"

14  to support the trial court's (first judge's) conclusion:

15        This matter had been continued on many prior occasions, and defendant had
          ample opportunity to ask to represent himself at any one of the hearings in which
16        he had appeared in court.  He did not do so until shortly before the scheduled trial
          date.  And though he points to the delay occasioned by the competency evaluation,
17        this is not a case in which defendant was found to be incompetent to stand trial
          and committed for treatment at a state mental hospital.  In fact, defendant
18        appeared in court on numerous occasions while the competency issue was
          pending.  Even after it was resolved and a new attorney was appointed to
19        represent defendant, he continued to appear in court without asking to represent
          himself.
20
          When defendant finally asked to represent himself, he evidenced what can best be
21        characterized as noticeable reluctance to explain his delay.  When pressed by the
          court, he finally admitted he would not be ready for trial on the scheduled date and
22        would in fact be requesting a continuance.  In these circumstances, there is ample
          evidence defendant was not acting in good faith and was simply trying to delay the
23        proceedings-irregardless of precisely how long of a continuance he intended to
          initially request.
24

25  People v. Johnson, 2004 WL 2802947 at *3.

26  \\\\\

7

The undersigned adds that the trial judge was in the unique position, as we are not, of judging the credibility of petitioner/defendant as he was giving his reasons for the belated request, or lack thereof.   Given petitioner's evasive looking responses as they appear in black and white, the judge may well have assessed the same with reasonable certainty observing the body language of petitioner along with the verbal responses.  Assuming that the black and white of the responses was ambiguous, the non-verbal cues may have made all the difference.

The finding by the trial court that petitioner was in fact engaging in delay tactics when asking to represent himself is *a factual finding* subject to a presumption of correctness in the absence of clear and convincing evidence to the contrary.  28 U.S.C. 2254 (e)(1).  No such level of evidence has been submitted.[5]  The conclusion by the appellate court, based on this factual finding, that the trial court was reasonable in assessing the situation, is entitled to be upheld unless AEDPA unreasonable – in excess of even clear error.  Petitioner cannot jump either hurdle on this record.

Again, the rule to be employed here is one of reasonableness.  Even if one could dispute the factual finding of delaying tactic per se, the rule to be employed here is one of reasonableness.  In other words, in light of the procedural circumstances of the case as a whole, was the trial court reasonable in finding petitioner's <u>Faretta</u> request untimely?  It surely was.

Petitioner changes focus in the traverse to the second judge's discussion with petitioner about his <u>Faretta</u> request having now discovered <u>Hirschfield v. Payne</u>, 420 F.3d 922 (9th Cir. 2005).[6]  Although  <u>Hirschfield</u> has superficial similarities to the case at bar, a close

---

[5]  Petitioner expressly disclaimed the need for an evidentiary hearing, and believed that the petition should be decided on the record.   Petitioner's Nov. 17, 2005 Points and Authorities at 3.

[6]  It is a bit unfair for petitioner to raise an entirely new theory in the traverse, without giving respondent a chance to address it.  However, because of the processing system for habeas cases, an initial decision by the magistrate judge to be reviewed by the district judge on objections, respondent will have an opportunity to address the issue if respondent desires.  Moreover, the change in theory appears unexhausted in that the appellate brief to the Court of Appeal focused only on the first judge's determination.

inspection revels distinctions with a difference, indeed, distinctions which the Ninth Circuit found critical.  Hirschfield involved a situation, as here, where an initial judge found the Faretta request untimely, and the matter came up before a second judge, but unlike the situation here, the second judge in Hirschfield actually held a second, independent hearing on a second Faretta motion.  The Ninth Circuit found fault with the second judge's hearing and granted the writ on that basis.  Hirschfield made clear that if the second judge had refused to hold a second hearing because the first and second were very proximate to each other, the outcome would have been different.

> Hirschfield again moved to represent himself on April 24, before Judge Ishikawa. It is clear that this represented a separate motion and not merely a discussion of the April 7 motion.  Both Hirschfield and Judge Ishikawa did make references to the first motion during their colloquy, and Judge Ishikawa did state that "I am reaffirming that which has already been determined by previous decisions in this case," but Judge Ishikawa spent almost an hour hearing Hirschfield's argument in favor of his motion, and the judge's language indicates that he understood himself to be addressing a new motion from Hirschfield rather than merely declining to revisit Judge Schindler's decision.
>
> ***
>
> Hirschfield argues that we must therefore consider Judge Ishikawa's denial of his motion separately from the earlier denial by Judge Schindler, and we agree.  We have found no authority to suggest that merely because a state court initially denies a motion on valid grounds, its subsequent denials of the same motion are not subject to scrutiny on direct or habeas review.
>
> ***
>
> For the following reasons, however, Judge Schindler's ruling cannot insulate Judge Ishikawa's ruling from review.
>
> First, while it is doubtless true that Judge Ishikawa could have simply declined to revisit Judge Schindler's decision, the fact is that he did not: rather, he heard argument from Hirschfield and appears to have understood himself to be deciding the issue anew.

Hirschfield, 420 F.3d at 927-929.

The situation here was quite different.  In this case, the matter came up before the second judge as an aside while efforts to find a courtroom were ongoing.  Petitioner asked the second judge: "Your Honor, do you have time to hear my Faretta motion?  The trial judge answered: "Well, Mr. Johnson, I think we've heard a Faretta motion once before."  RT 2.  A discussion then ensued about the first judge's ruling with petitioner and his counsel complaining

about the result of the first judge's ruling, and the second judge giving his opinion on what the

first judge must have found.  RT 2-6.  The matter concluded with the second judge refusing to

rehear the motion:

> The COURT: Well, that's what Judge Hammerstone found, whether he was right or wrong.  And if he's wrong, I'm sure the Appellate Court will tell him so.  But, anyway, I'm sure that's why— you asked me why he denied it, and I think that's the reason for it, tell you the truth.  I could be wrong, but I think that's probably what happened.
>
> All right.  In any event, it does look like the motion has been heard and denied just a short time ago, *so I'm not going to hear it again now.*

RT 6 (emphasis added)

Thus, this case is the polar opposite of <u>Hirschfield</u> in terms of whether a second

motion was heard by a second judge.  Other facts distinguish the present case as well.  In

<u>Hirshfield</u>, more than two weeks had expired between the motions.  Here, the first motion was

heard the business day before trial was scheduled to start.  Petitioner's case then trailed on the

trial calendar during the next week, and while trailing, six days after the first motion was heard,

petitioner attempted to renew his <u>Faretta</u> motion.  There is no requirement in the law that the

court hold weekly <u>Faretta</u> hearings on a defendant's seriatim requests to represent himself.  The

first trial judge found that petitioner's request was made for delay purposes, the second judge

knew of that holding and relied on the law of the case in refusing to hold another one – at a time

when petitioner could have gone to trial in 30 minutes had a courtroom opened, or in a couple

business days.

Petitioner's change of focus to the second trial judge does not change the result of

this case.

*Conclusion*

Accordingly, IT IS HEREBY RECOMMENDED that the petition for habeas

corpus be denied.

\\\\\

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 04/21/08

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
john1002.157

11